IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CRITTENDEN BERRY,                          §
                                           §
                    Plaintiff,             §
                                           §   Civil Action No. 3:21-CV-0433-D
VS.                                        §
                                           §
DRIVE CASA, LLC, et al.,                   §
                                           §
                    Defendants.            §

MEMORANDUM OPINION
AND ORDER

In this action seeking unpaid overtime pay pursuant to the Fair Labor Standards Act

of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, plaintiff Crittenden Berry ("Berry") moves for

summary judgment on defendants' exemption-based affirmative defenses and on his

entitlement to liquidated damages.  Defendants move for summary judgment on their

administrative exemption affirmative defense.  The court recognizes that, because no jury

demand was timely made, this case will be tried in a bench trial.  In a nonjury context, the

judge has wider authority to enter summary judgment because he is the ultimate trier of fact.

*See In re Placid Oil Co.*, 932 F.2d 394, 397-98 (5th Cir. 1991).  The judge may weigh the

evidence and draw inferences at the summary judgment stage unless those inferences involve

issues of witness credibility or disputed material fact.  *Id.*  Nevertheless, for the reasons that

follow, the court concludes that summary judgment should largely be denied.  It therefore

grants in part and denies in part Berry's motion and denies defendants' motion.

I

Defendant Drive Casa, LLC ("Drive Casa") owns and operates six auto finance dealerships in the Dallas/Fort Worth area.[1]  In 2019 Drive Casa hired Berry to work in its Finance Department under Drive Casa's Chief Financial Officer, Ryan Simbec ("Simbec"). In this position, Berry was paid an hourly wage and received overtime pay for hours worked in excess of 40 hours per week.

On October 1, 2019 Drive Casa's Chief Executive Officer, Mark Gallas ("Gallas"), promoted Berry to the position of Director of the Information Technology ("IT") Department.  As IT Director, Berry was paid an annual salary of $75,000.  From October 2019 until his termination, Berry performed various tasks as IT Director, including: creating and managing an internal help desk at Drive Casa; attending Executive Team[2] meetings; replacing and upgrading all of the existing company computers, printers, and associated hardware in Drive Casa's main office headquarters and outside sales lots; training Drive Casa employees on how to install passwords, send and retrieve emails, and perform other basic tasks related to operating a new computer; selecting vendors and negotiating contracts for

---

[1]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence.  *See, e.g., GoForIt Ent., LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

[2]According to defendants, the core members of the Executive Team were Gallas, Simbec, Berry, and Drive Casa's Chief Operating Officer, Rafael Torres.

Drive Casa, including for Drive Casa's phone and Internet service providers; replacing and upgrading Drive Casa's phone system; relocating various employees' workstations to their homes during the COVID-19 pandemic; and setting up and configuring multiple new offices when Drive Casa built out its sixth sales lot in 2020.

Berry maintains that Drive Casa kept no system for monitoring employee work activity and that no record was ever kept of the work hours he performed in the field during 2019 and 2020.  He estimates that, during the entire time he was employed by Drive Casa, he regularly worked between 90 and 100 hours each week.

In December 2020 Drive Casa offered Berry a $2,000 year-end bonus.  Berry believed this amount was insufficient and complained to Drive Casa's majority owner, Justin Cox ("Cox"), who told Berry that he would talk to Gallas and "fix the problem."  P. Br. (ECF No. 22) at 12.  Defendants maintain that Berry met with Gallas to discuss his bonus; that Gallas instructed Berry to provide a list of his work over the last year to determine whether an increase in the bonus was warranted; and that, based on the list Berry provided, Drive Casa made the decision to increase Berry's bonus from $2,000 to $10,000.  Berry contends that, when he emailed Gallas on January 5, 2021 stating that he needed to hear about his bonus by 5:00 p.m. that afternoon, Gallas fired him immediately.

A few months later, Berry filed the instant lawsuit against Drive Casa, Gallas, and Cox, alleging, *inter alia*, a claim for unpaid overtime pay under the FLSA.[3]  Berry and

___

[3]Berry also alleged a retaliation claim, but the court dismissed that claim on December 8, 2021 in response to Berry's unopposed motion.

- 3 -

defendants now cross-move for summary judgment.  The court is deciding the motions on the briefs.

II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the nonmovant must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) ( per curiam).  An issue is genuine if the evidence is such that a reasonable trier of fact could return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if the nonmovant fails to meet this burden.  *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on a claim or defense on which the moving party will bear the burden of proof at trial, the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the movant must

demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Both sides move for summary judgment on the question whether the "administrative exemption" to the FLSA's overtime requirements applies to Berry.

A

The FLSA requires employers to pay overtime compensation to employees who work more than 40 hours a week. 29 U.S.C. § 207(a)(1). "Exempt from the FLSA, however, are individuals 'employed in a bona fide executive, administrative, or professional capacity.'" *Fraser v. Patrick O'Connor & Assocs.*, 954 F.3d 742, 745 (5th Cir. 2020) (quoting 29 U.S.C. § 213(a)(1)). "[T]he ultimate decision whether [an] employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Lott v. Howard Wilson Chrysler-Plymouth, Inc*., 203 F.3d 326, 331 (5th Cir. 2000) (alterations in original). "With respect to the underlying facts, the employer has the burden of establishing that an exemption applies by a preponderance of the evidence." *Fraser*, 954 F.3d at 745 (citing *Meza v. Intelligent Mex. Mktg., Inc*., 720 F.3d 577, 581 (5th Cir. 2013)). In deciding whether an exemption applies, the court "must give FLSA exemptions a 'fair reading' rather than

- 5 -

narrowly construing them against the employer." *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020) (quoting *Encino Motorcars, LLC v. Navarro*, ___U.S.___, 138 S. Ct. 1134, 1142 (2018)).

At issue in this case is the FLSA's administrative exemption. For it to apply, three requirements must be satisfied: (1) the employee must be "[c]ompensated on a salary or fee basis . . . at a rate of not less than $684 per week," (2) the employee's "primary duty" must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) the employee's "primary duty" must "include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a); *see also Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017)). It is undisputed that Drive Casa paid Berry more than $684.00 per week. Accordingly, the court focuses on the second and third requirements of the administrative exemption.

## B

The court begins with the second requirement.

### 1

The second element of the administrative exemption affirmative defense requires the employer to establish that the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). The regulations define an employee's "primary duty" as the "principal, main, major or most important duty that the

employee performs." 29 C.F.R. § 541.700(a). "The 'directly related' test is met by the employee's 'assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.'" *Dewan*, 858 F.3d at 335 (quoting 29 C.F.R. § 541.201(a)). For the "directly related" inquiry, "it is 'the type of work performed by the employee' on which [the court] must focus." *Id.* (quoting 29 C.F.R. § 541.201(a)).

2

In support of their motion for summary judgment, defendants contend that Berry "falls squarely under the administrative exemption" because his "primary duty" as Drive Casa's IT Director was directly related to the management or general business operations of the company. Ds. Br. (ECF No. 15) at 12. They point to Berry's deposition testimony in which he acknowledged that he was "the executive at Drive Casa that overs[aw] all systems software, as well as IT." Ds. App. (ECF No. 17) at 26. Defendants also cite evidence that Berry helped secure Salesforce for Drive Casa's Customer Relationship Management ("CRM") system, identified an issue with the Internet service at one of Drive Casa's sales locations, and ran tests and coordinated with vendors on behalf of Drive Casa to find a solution. In sum, defendants maintain that Berry's responsibilities involved matters of significance to Drive Casa and that "Drive Casa relied [on] Plaintiff to manage and direct all IT related functions of its business operations." Ds. Br. (ECF No. 15) at 13.

Berry responds, *inter alia*, that virtually 100% of the time he spent on a day-to-day basis was routine, recurrent non-office, non-discretionary physical work that involved

traveling to locations from Waco to Fort Worth and in and around Dallas to physically install, repair, relocate, and replace computer workstations, security cameras, and phones. He estimates that 70% of his time was spent outside of the Drive Casa headquarters at the six satellite locations or employees' home offices and that

> [v]irtually nothing Plaintiff did outside the Main Office could be considered exempt. He was not supervising anyone outside (or inside) the main office, including while he was working at the sales lots. He was not exercising discretion or independent judgment while he was doing installations or troubleshooting[.]

P. Br. (ECF No. 28) at 21. As for the time that Berry spent working in the main office, he posits that virtually all of his work was non-exempt. According to Berry:

> He was not supervising or managing any employees in the main office. Over the course of his employment, he had to physically replace all the phones in the Main Office. He had to remove and replace every computer, printer, scanner, monitor, keyboard and all other components of every workstation in the office as well. While there he manned the IT helpdesk full time. He would try to answer and resolve user issues remotely if possible but would have to leave the office to travel to the problem workstation location if that couldn't be done. If he couldn't fix the problem using the installation manual, he would have to contact the helpdesk at Microsoft, Vonage or one of the other vendors. None of this work could be considered exempt because it was almost entirely physical labor, or alternatively, routine and recurrent helpdesk work which did not involve the use of discretion or independent judgment.

*Id.* at 22.[4]

_____

[4]On December 20, 2021 defendants filed objections to Berry's summary judgment evidence. They object to exhibits 14 and 15 on the ground that they contain time summaries that "are merely data points that Plaintiff collected and interpreted - but is not an accurate representation of alleged time worked by Plaintiff," Ds. Objs. (ECF No. 33) at 1; they object

3

There are genuine issues of material fact that preclude summary judgment on the question whether Berry's "primary duty" was the performance of office or "non-manual" work directly related to the management or general business operations of Drive Casa.

On the one hand, Berry does not dispute that his position as IT Director involved maintaining, upgrading, and administering the company's computer and phone systems. Nor does he contest that he purchased computer equipment, recommended various service providers, and served as Drive Casa's "entire IT department," P. Br. (ECF No. 28) at 15. Berry acknowledges in his response brief that he "sometimes, but infrequently, was asked to review vendor agreements and asked to comment on questions of replacing software providers or other outside vendors"; that he attended Executive Committee meetings; that he provided reports on the progress of the workstation replacement, phone installation, or other activities; and that "[m]ost of these activities could be considered exempt activities in the [§] 213(a)(1) analysis," *id.* at 23.

But Berry has also adduced evidence that, while he was IT Director, he spent the vast

_____

to ¶ 13 of Berry's declaration on the ground, *inter alia*, that it contains conclusory allegations concerning defendants' mindset regarding Drive Casa's compliance with the FLSA; and they object to ¶ 14 of Berry's declaration on the basis that it contains conclusory allegations regarding alleged time that Berry worked on nonexempt matters. Defendants objected to similar evidence (on similar grounds) contained in plaintiffs' summary judgment response appendix. On February 24, 2022 Berry moved for leave to file a reply to defendants' objections. Because, other than as discussed *infra* in note 10, the court has not relied on any of this evidence in deciding the instant summary judgment motions, it overrules defendants' objections as moot and denies Berry's motion for leave to file a reply.

majority of his time physically installing, replacing, and repairing the company's entire
phone system, replacing or relocating virtually every computer workstation in the sales lots
and office, and acting as the helpdesk for all IT-related company-wide equipment problems.[5]
He contends that the time he spent on exempt activities "was minuscule compared to the
daily responsibilities he had as a technician installing and servicing equipment at the main
office and 6 automobile sales locations." *Id.*

     To be sure, district courts have occasionally disregarded an employee's "manual"
work when the employee's "primary duties" were comprised of non-manual tasks.[6]  But
defendants will have the burden of proof on the administrative exemption affirmative defense
at trial.  This means that they must establish this defense beyond peradventure to obtain
summary judgment.  The evidence in the summary judgment record is insufficient to meet
the "heavy" burden of establishing beyond peradventure that Berry's "primary duties" were
non-manual.

     Moreover, there is conflicting evidence concerning the amount of time that Berry

_____

    [5]Berry argues, and defendants do not appear to dispute, that these tasks would
constitute "manual," as opposed to "office or non-manual" work.

    [6]*See, e.g., Bernard v. Grp. Publ'g, Inc.*, 970 F.Supp.2d 1206, 1224 (D. Colo. 2013)
("[T]he Court finds that even if Plaintiff's job included some work that would not qualify as
non-manual work directly related to the management or business operations of Defendant,
his primary duties were comprised of non-manual tasks directly related to assisting with the
running or servicing of Defendant's business."); *Koppinger v. Am. Interiors, Inc.*, 295
F.Supp.2d 797, 802 (N.D. Ohio 2003) ("While some of his work may be considered manual
in that he necessarily had to perform some physical actions (installing hardware/software,
etc.), those actions do not negate the exemption because plaintiff's deposition testimony
establishes the prominence of the problem-solving, planning, and purchasing duties.")

actually spent performing exempt versus non-exempt tasks as well as the relative importance of those tasks. *See Dewan*, 858 F.3d at 335 (agreeing that, to decide whether the administrative exemption applies, the court must "consider 'the amount of time the employee devotes to particular duties, as well as the significance of those duties'" (quoting *Zannikos v. Oil Inspections (U.S.A), Inc.*, 605 Fed. Appx. 349, 352 (5th Cir. 2015) (per curiam))).

Because there are genuine issues of material fact regarding the second requirement,[7] the court cannot grant summary judgment holding that the administrative exemption affirmative defense has been established. *See, e.g., Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1128 (9th Cir. 2002) (reversing summary judgment with respect to second element where there was conflicting evidence on the question whether employee's "manual activities, such as installation, troubleshooting, and repair, were an insignificant part of his duties and/or were directly related to his non-manual administrative tasks," or whether the plaintiff's "primary duty was to install, troubleshoot, and maintain Max Media equipment."); *Clark v. Shop24 Global, LLC*, 77 F.Supp.3d 660, 674 (S.D. Ohio 2015) (finding genuine issue of fact concerning second element of administrative exemption where there was evidence that plaintiff "devoted considerable time to installing, repairing, and maintaining the Defendants' vending machines," but there was also evidence that plaintiff "devoted

---

[7]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

significant time to the performance of office or non-manual work directly related to the management or general business operations of the Defendants or the Defendants' customers.").

## C

The court turns next to the third element of the administrative exemption affirmative defense.  Although the court's decision regarding the second element provides a sufficient basis on which to deny summary judgment, it may assist the parties in settling this case, or preparing for trial, if the court addresses the third requirement as well.

### 1

The third element requires that the employer establish that the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3).

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a); *see also Hobbs v. EVO Inc.*, 7 F.4th 241, 250 (5th Cir. 2021).  The exercise of discretion must involve more "than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  *Jones v. New Orleans Reg'l Physician Hosp. Org.*, 981 F.3d 428, 435 (5th Cir. 2020) (quoting 29 C.F.R. § 541.202(e)).  But an employee "need not exercise final decision-making authority

to fulfill the regulation's standard." *Id.* (citing *Lott*, 203 F.3d at 331); *see also* 29 C.F.R. § 541.202(c) ("employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.").

Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

## 2

The summary judgment evidence would permit a reasonable trier of fact to find that Berry exercised at least some degree of discretion and independent judgment in performing

work that affected business operations to a substantial degree.  For example,[8] the evidence would permit the reasonable finding that Berry negotiated the terms of Drive Casa's phone contract with Vonage; negotiated and executed, as "Chief Information Officer," a three-year Internet service contract with Momentum Telecom, Inc.; provided "valuable analysis and input" on the retention of other vendors and regularly vetted companies and performed strategic analysis so that Drive Casa could select the best vendor that suited the company's long-term needs; and worked with vendors[9] to provide technical solutions to problems faced by Drive Casa.

But the evidence on which Berry relies to defeat this affirmative defense would support a materially different finding: that, in connection with the vast majority of his daily tasks, Berry did not exercise any discretion or independent judgment.  For example, Berry maintains that

> [v]irtually 100% of the time he spent on a day-to-day basis was routine, recurrent non-office, non-discretionary physical work. It involved traveling to locations from Waco to Fort Worth and in and around Dallas to physically install, repair, relocate and replace computer workstations, security cameras and phones. In accomplishing these tasks, he followed the installation and setup

---

[8]As noted above, *see supra note* 7, "[w]hen this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho*, 658 F.Supp.2d at 812 n.8 (citing *Swicegood*, 2003 WL 22234928, at *17 n.25).

[9]Defendants cite evidence that, for example, Berry worked with representatives at Dealersocket in an effort to automate various procedures at Drive Casa; worked with Vonage to develop a way for Drive Casa to text customers for sales events; and was Drive Casa's point person in securing Salesforce as Drive Casa's CRM provider.

- 14 -

> manuals which accompanied the hardware and software. The
> delivery, installation, set up and testing of this hardware
> involved no discretion or independent judgment whatsoever.
> Plaintiff could hardly exercise any discretion or independent
> judgment on how to properly connect a printer or keyboard or
> monitor to a PC.

P. Br. (ECF No. 28) at 17. He contends that the manner and sequence of which computers

he had to replace, where he was to place them, and what other tasks he was required to

perform were "dictated every day by his supervisor, [Rafael] Torres ('Torres')," and that

Torres regularly gave him "detailed to-do lists." *Id.* at 19. Berry cites, in support, an April

2, 2020 email from Gallas stating:

> [t]o ensure we are all on the same page and we start each day
> ready to go in all operational areas, I would like for you to
> ensure that you are in communication with [Torres] multiple
> times each day. At a minimum, I want you two talking first
> thing each morning and then again around 5pm each day just so
> that we all stay on the same page.

P. App. (ECF No. 29) at 24. Berry also cites evidence that he lacked discretion with respect

to "substantial purchases," i.e., purchases exceeding $1,000. And he argues that his role with

respect to sending notice of termination to Roland or signing the Momentum Internet

"bundling" contract was simply ministerial; that he was performing these tasks at the express

direction of Gallas; and that evidence that he was asked to be a contact point with Vonage

or other vendors does not imply control of the vendor or authority to bind Drive Casa to an

agreement. Finally, as with the second element, Berry contends that the time he spent

involved in any non-exempt activities "was negligible in comparison to his daily activities

as the helpdesk technician." P. Br. (ECF No. 28) at 24.

- 15 -

The court concludes that there is a genuine dispute of material fact concerning whether Berry's "primary duty" as IT Director included the exercise of discretion and independent judgment with respect to matters of significance, or whether, as Berry contends, the vast majority of his work was spent on tasks that required no discretion or independent judgment ("routine procuring, inspection, physical transport and installation of phones, security cameras and computer workstations or follow-up helpdesk responses to problems users had with that equipment," P. App. (ECF No. 29) at 11-12)).[10]  As the Fifth Circuit has explained:

> Th[e] limited factual record could reasonably be interpreted to provide two different understandings of the scope of plaintiffs' discretionary authority and independent judgment.  This is evidence that must be weighed by a jury.  Notably, a vast majority of this contrary evidence comes from the plaintiff['s] own testimony.  "To the extent the testimony of a witness who is also a party may be impaired by party self-interest, it is ordinarily the role of the jury—not the court on summary judgment—to discount it accordingly."  This is such a case.

*Dewan*, 858 F.3d at 340 (citation omitted).  Because genuine issues of material fact exist with respect to Berry's "primary duties," the court concludes that neither defendants nor Berry is

---

[10]Defendants object in part to ¶ 14 of Berry's declaration, contending that "it contains conclusory allegations regarding alleged time spent by Plaintiff on nonexempt matters."  Ds. Objs. (ECF No. 33) at 2.  Although defendants maintain that there is no documentation in the record to support Berry's averment that he spent 97% of his time on nonexempt work for Drive Casa, they do not dispute that a significant amount of Berry's time was spent on these tasks.  The court need not resolve at the summary judgment stage the precise amount of time that Berry spent on various tasks at Drive Casa.  This is an issue to be resolved at trial.  As stated above, *see supra* note 4, because the court has not otherwise relied on ¶ 14 in Berry's declaration, and has not relied the other evidence to which defendants object, it overrules defendants' objections as moot.

entitled to summary judgment on the administrative exemption affirmative defense.

IV

Berry moves for summary judgment on the question whether he is exempt under the computer specialist exemption in 29 U.S.C. § 213(a)(17).[11]  Defendants have not responded to this ground of Berry's motion.  Although defendants' failure to respond does not permit the court to enter a "default" summary judgment on this affirmative defense, *see, e.g. Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its]

---

[11]29 U.S.C. § 213(a)(17) exempts from the FLSA's minimum wage and maximum hour requirements:

> any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is—
>> (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
>> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
>> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
>> (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and
> who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour[.]

unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs*., 929 F.2d 160, 165 (5th Cir. 1991)).  Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion; [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2), (3).  Because defendants have not responded to Berry's motion for summary judgment with specific evidence to support an affirmative defense based on 29 U.S.C. § 213(a)(17), the court grants Berry's motion with respect to this affirmative defense and holds that defendants cannot rely on it at trial.

## V

Berry moves for summary judgment with respect to his entitlement to liquidated damages under 29 U.S.C. § 216(b).

## A

The FLSA provides that an employer who violates the requirement to pay overtime compensation "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[12]  Although the language of § 216(b) is mandatory, Congress

---

[12]29 U.S.C. § 216(b) provides, in pertinent part:

Any employer who violates the provisions of section 206 or

thereafter added a provision that grants district courts the sound discretion not to award liquidated damages if the employer shows (1) "that the act or omission giving rise to such action was in good faith" and (2) "that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260; *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979) (minimum wage case); *see Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1309 n.3 (5th Cir. 1976) (age discrimination case) (holding that employer must show failure was in good faith and predicated upon such reasonable grounds that it would be unfair to impose liquidated damages under FLSA).  The purpose for the amendment "was to mitigate the harshness of the then-strict liability offense of violating Section 216."  *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1263 (5th Cir. 1986).

The burden of proving that the two-prong test has been met is upon the employer, 29 U.S.C. § 260 ("if the employer shows to the satisfaction of the court"); *Thomas v. Louisiana*, 348 F.Supp. 792, 796 (W.D. La. 1972), who has the "plain and substantial burden of persuading the court by proof that [its] failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict," *Barcellona*, 597 F.2d at 468.  The defense requires plain and substantial evidence of at least an honest intention to ascertain what the FLSA requires and

---

section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

to comply with it.  *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (citing *Williams v. Tri-Cnty. Growers, Inc*., 747 F.2d 121, 129 (3d Cir. 1984)); *Barcellona*, 597 F.2d at 468-69.  "If an employer 'suspect[s] that [it is] out of compliance with the FLSA,' it cannot act in good faith."  *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (alterations in original) (quoting *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)).  The burden is a difficult one to meet; "[d]ouble damages are the norm, single damages the exception."  *Brock*, 833 F.2d at 19 (quoting *Walton v. United Consumers Club, Inc*., 786 F.2d 303, 310 (7th Cir. 1986)).  Even if the employer carries its burden, the court retains the discretion to award liquidated damages.  *Hayes v. McIntosh*, 604 F.Supp. 10, 21 (N.D. Ind. 1984); *Thomas*, 348 F.Supp. at 796.

B

Berry maintains that he is entitled to summary judgment on the question of liquidated damages because "[i]t is undisputed that Defendants made no inquiry whatsoever in Plaintiff's case in order to determine how he was to be classified."  P. Br. (ECF No. 22) at 23.  In support, he cites, *inter alia*, evidence that, in early September 2020, Simbec presented the results of an internal audit to Gallas, Torres, and Cox in which he concluded that at least 50 Drive Casa employees were incorrectly classified as exempt in the Operations Department.

Defendants respond that they had no reason to question Berry's exempt status because "he was in charge of all things IT for Drive Casa," Ds. Br. (ECF No. 31) at 15.  They maintain that Berry was one of four regular members of the Executive Team, he came and

went as he pleased, he took vacation when he wanted to, he was afforded all of the benefits of an executive, he signed and negotiated agreements on behalf of the company, he recommended and helped secure software that Drive Casa would invest millions into, and he helped make decisions that would impact Drive Casa for years.  To the extent Berry relies on Simbec's September 2020 email, defendants contend that this email had nothing to do with Berry, as IT Director, and that neither Simbec nor anyone else at Drive Casa, including Berry, raised any concerns about Berry's being non-exempt.  Moreover, defendants maintain that the email, itself, and the responses to Simbec's audit suggest that Drive Casa was actually taking steps to comply with the FLSA, including by retaining a third party, ADP or HR Professional, for this process.  *See* P. App. (ECF No. 23) at 30 (Gallas' statement: "I want ADP to bring in their experts and complete a review of our employees and their job duties and give us definitive guidance on which employees must be hourly and which can be salary."); *id.* at 26 (Cox's statement: "Regardless of what ADP says, we should make sure we put ourselves in the best compliance position possible going forward, especially as we grow.  Let's discuss, but we should probably look for an internal HR role or see if there is an existing person/role that could take that on.").

C

Based on evidence in the summary judgment record, a reasonable trier of fact could find that defendants believed in good faith that Berry was exempt from the FLSA's overtime requirements and that they had reasonable grounds for this belief.  At the very least, Simbec's September 2020 audit, and the responses to his findings, would permit the reasonable

- 21 -

inference that around September 2020, Simbec, Gallas, and Cox each had an honest intention to ascertain what the FLSA required and that they took steps to comply with it.  Accordingly, even assuming *arguendo* that Berry would be successful on the merits of his FLSA claim, summary judgment cannot be granted on the question of liquidated damages because there are genuine issues of material fact concerning whether any alleged failure to comply with the FLSA was in good faith and predicated upon such reasonable grounds that it would be unfair to impose liquidated damages.

*     *     *

Accordingly, for the reasons explained, the court grants in part and denies in part Berry's motion for summary judgment, denies defendants' motion for summary judgment, and denies Berry's motion for leave to file a reply.

**SO ORDERED**.

March 1, 2022.


SIDNEY A. FITZWATER
SENIOR JUDGE

- 22 -